655 F.2d 428
 TOWN OF BURLINGTON and the School Committee of the Town of
Burlington, Plaintiffs, Appellants,
v.
The DEPARTMENT OF EDUCATION OF the COMMONWEALTH OF
MASSACHUSETTS and John Doe, as He is the Father
and Next Friend of John Doe, Jr.,
Defendants, Appellees.
 Nos. 80-1527, 81-1112.
 United States Court of Appeals,
First Circuit.
 June 18, 1981.
 
 David Berman and John F. Zamparelli, Medford, Mass., Town Counsel for plaintiffs, appellants.
 Michael Broad, Asst. Atty. Gen., Boston, Mass., with whom Francis X. Bellotti, Atty. Gen., Boston, Mass., was on brief for appellee, Dept. of Ed. of the Commonwealth of Massachusetts.
 Gerald B. Gallagher, Acton, Mass., for defendants, appellees John Doe, etc.
 Before COFFIN, Chief Judge, BOWNES, Circuit Judge, WYZANSKI, Senior District Judge.*
 COFFIN, Chief Judge.
 
 
 1
 The ultimate question to be decided in this case is whether the Town of Burlington, Massachusetts must pay for the special education of John Doe, Jr. The district court held that the Massachusetts Department of Education's decision that the Town must reimburse Doe, Jr.'s father was supported by substantial evidence as a matter of state law. It also denied the Town's motion for stay of the Department's decision and granted Mr. Doe's and the Department's motions that the Department's decision be enforced during the pendency of the action. The Town appeals all three judgments. We vacate the first and third judgments and affirm the second judgment.
 
 
 2
 * The parties to this suit agree that John Doe, Jr. has special educational needs justifying some type of publicly financed service. See generally 20 U.S.C. §§ 1401-20 (providing federal aid for education of handicapped); Mass.Gen.Laws Ann. ch. 71B (West Supp.1981) (providing for education of children with special needs). The Town proposed that he attend the special education program at the Pine Glen School, a public school that provides both regular elementary and special educational curricula. Mr. Doe preferred the private Carroll School. As state law provides, Mr. Doe sought review of the Town's decision by the state Department of Education. See id. at §§ 3 & 10; 603 C.M.R. § 401.0 (Code of Massachusetts Regulations). See also 20 U.S.C. § 1415(b)(2) & (c). The Department held hearings on this matter from September to November 1979. At the beginning of his child's fourth grade year in September 1979, Mr. Doe enrolled his son in the Carroll School. In January 1980, the Department ruled that the Carroll School was the appropriate program and ordered the Town to pay for the child's education there. In its decision the Department advised that the Town could "file a petition for review in the Superior Court or the Federal District Court". Cf. Ezratty v. Commonwealth of Puerto Rico, 648 F.2d 770, at 776 (1981) (no express consent by Puerto Rico to suit in federal court).
 
 
 3
 The Town then sought judicial review of the Department's decision. It filed suit against the Department and Mr. Doe in federal district court on a two count complaint. Jurisdiction for the first court ("the federal count") was founded upon 20 U.S.C. § 1415(e)(2), which provides for judicial review for "(a)ny party aggrieved by the findings and decision made" pursuant to state procedures required of state and local agencies receiving federal assistance by the federal aid-to-the-handicapped scheme.[1] See id. at § 1415(a), (c) & (e). The second count ("the state count") claimed to be a pendent matter under a Massachusetts law establishing judicial review for "any person... aggrieved by a final decision of any agency...." Mass.Gen.Laws Ann. ch. 30A, § 14 (West 1979).[2]
 
 
 4
 The Town moved on May 26, 1980 for a stay of the Department's order that the Town pay for the Carroll School education. It sought only to avoid payment to the Carroll School and to Mr. Doe at that time; it did not seek and has not sought to have John Doe, Jr. transferred from his ongoing education at the Carroll School. In connection with this motion, the Town requested an evidentiary hearing. After hearing oral argument on July 7, 1980, but without taking evidence, the district court denied the requested stay on July 24, 1980. The Town appealed to us from that decision.
 
 
 5
 The parties filed cross motions for summary judgment on the state count, which the district court decided in favor of the defendants on November 19, 1980. The district court certified this judgment as final under Fed.R.Civ.Proc. 54(b), and set the federal count for future trial. The Town appealed from the summary judgment decision. We consolidated this appeal with that already pending from the district court's July 24 decision to constitute No. 80-1527.
 
 
 6
 We heard oral argument in No. 80-1527 on March 4, 1981. Meanwhile, the posture of the case had continued to change. The Department moved for a preliminary injunction on December 11, 1980 to enforce its order requiring the Town to pay tuition and to reimburse the Does. This motion supplemented Mr. Doe's pending motions to similar effect. On December 15, 1980, the Massachusetts Commissioner of Education wrote to the Town threatening to freeze all of its special education assistance unless the Town complied with the Department's order. After a hearing on this matter, a state hearing officer concluded on January 30, 1981 that the Department properly could withhold fiscal year 1981 funds from the Town. On February 9, 1981, the district court held a hearing at which the Town stated that it was now "prepared to keep this child in school until this case can be decided." The Town also made clear that it would also pay for the child's school transportation "from here on in ... without any problem to Mr. Doe." We were informed at oral argument that the Town has made good on these commitments.
 
 
 7
 The Town persisted, however, in refusing to reimburse Mr. Doe for his past expenses for the 1979-1980 academic year. On February 12, 1981, the district court issued an order requiring the Town, inter alia, to reimburse Mr. Doe in the amount of $8837.97 for past educational expenses. The Town appealed this order, which we docketed as No. 81-1112 and in which we heard oral argument on June 3, 1981.[3]
 
 
 8
 We therefore have before us in No. 80-1527 (1) an appeal from the district court's November 19, 1980 grant of summary judgment for the Department and Mr. Doe on Count II of the Town's complaint, and (2) an appeal from the district court's July 24, 1980 denial of the Town's motion for stay of the Department's order pending final resolution of the case. In No. 81-1112 we are presented with the Town's appeal from the district court's February 12, 1981 order of 1979-1980 reimbursement. We consider these issues in that order.
 
 II
 
 9
 We hold that the district court erred in granting summary judgment for the defendants under state law because we conclude that state law cannot be applied when review under federal law is sought. By its terms 20 U.S.C. § 1415(e)(1) provide that decisions by the state educational agency "shall be final, except that any party" has judicial appeal rights under 20 U.S.C. § 1415(e)(2). That subsection provides for review in state or federal court. It also sets forth the procedure and standards for this review: "In any action brought under this paragraph the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." Id.
 
 
 10
 This federal specification for review, when invoked, seems to us designed to occupy the field over an inconsistent state provision.[4] Here the arguably applicable state review provision part of the state's general administrative procedure legislation calls for, inter alia, judicial review governed by the substantial evidence standard. Mass.Gen.Laws Ann. ch. 30A, § 14. This standard does conflict with the federal standard; we can imagine many judicial reviews that would uphold an agency decision as based on substantial evidence but that would reach a different result were new evidence to be taken and judged under the more rigorous "preponderance of the evidence" standard.
 
 
 11
 This conflict could lead to results that should be avoided. For instance, the Department might have ruled in this suit that the Town's proposed plan was faulty but that appropriate relief was something other than what Mr. Doe sought. One aggrieved party might have selected a state forum for review under state law while the other filed in federal court claiming review under the federal standard. If both review provisions legitimately coexisted, the resolution of the controversy could inspire an unseemly race to judgment. Even this would not dependably produce consistency. A decision based simply on substantial evidence would not be res judicata for an issue to be decided by the more probing preponderance of the evidence standard. The converse situation would often be more settled, since a finding under the preponderance standard would generally control the substantial evidence question. But inconsistencies could appear here as well. The federal provision directs that the reviewing court "shall hear additional evidence at the request of a party", while the state provision normally confines its review to the record developed by the agency. See Mass.Gen.Laws Ann. ch. 30A, § 14(6) (West 1979). A preponderance-of-the-evidence holding based on an expanded record could present a different legal issue than that faced on a substantial evidence review of a limited record, thus again presenting the specter of inconsistent federal and state judgments, one which might attempt to affirm and enforce the Department's ruling while the other sought to overturn it.
 
 
 12
 We therefore vacate the district court's decision concerning state law that does not apply in this case.[5] This will leave the scheduled trial on the federal count as the sole mechanism of judicial review in this case.
 
 III
 
 13
 The Town appropriately styled its motion that the district court stay the Department's enforcement of its order as a request for a preliminary injunction. Therefore, the Town "faces a heavy burden in attempting to convince us to upset the judgment of the district court in this matter." Manning v. Trustees of Tufts College, 613 F.2d 1200, 1202 (1st Cir. 1980). We resolve the question on the narrow ground that the Town has not shown a danger of immediate irreparable injury. See Automatic Radio Mfg. Co. v. Ford Motor Co., 390 F.2d 113, 116 (1st Cir. 1968).
 
 
 14
 The Town's only asserted injury is the payment of money it fears will not be returned should it prevail in this suit. This sum is the Town's share of the added cost of the private Carroll School over the public Pine Glen School,[6] which the Town claimed was at least $3691 a year.[7] Apparently assuming that the litigation would last two years, the Town thus argued that it faced an irreparable injury of $7400.
 
 
 15
 Normally the fact of a relatively small and precisely quantifiable injury is sound evidence that preliminary equitable relief is not warranted since just such injuries can be remedied adequately by final judgment. In this case the Town attempted to escape this general guide by pointing to Mr. Doe's statement, appended to his "Motion to Require Plaintiffs to Honor Decision of the Department of Education of the Commonwealth", that he would "not have the full liquidity needed to litigate this case against a governmental body with comparatively unlimited financial assets."[8] The Town commented that it was "hardly necessary to read between the lines; if the town pays out the money to pay for John's education at the Carroll School, its chances of ever seeing that money back if it prevails on either or both counts of the present action are slim."
 
 
 16
 We do not think that Mr. Doe's statement the sole contemporaneous substantiation that the Town offered for a threat of immediate irreparable injury was sufficient to discharge the Town's burden in requesting an injunction here. We take Mr. Doe's lament regarding "liquidity" in its ordinary sense, as referring to a condition in which assets are not liquid, but are not necessarily wanting. The reference to litigation "against a governmental body with comparatively unlimited financial assets" we understand to imply either that the Does expected that their ability to match the Town's conduct of this litigation would be hindered by their own more pressing resource constraints, or that they would be forced to make undue sacrifices (such as liquidating major capital assets, like their home) to keep pace with the Town. Neither of these possibilities would necessarily hamper the Town's ability, in the event of its ultimate victory, to collect a $7400 judgment against an individual that the record shows to be employed by the federal government as a professional in a supervisory position. A cynical observer might remark that these impediments to the Does' capacity to finance spirited litigation could even increase the chances of the Town's final recovery. We therefore cannot say that the district court abused its discretion in denying the Town's request for preliminary injunction.
 
 
 17
 The Town also complains that the district court ruled without holding an evidentiary hearing. We observe that the Town exercised its ample opportunity to brief its position, and again presented its arguments in a substantial oral hearing before the district court. The sole asserted basis for the threat of irreparable injury in each instance was Mr. Doe's statement. Although the Town made clear its desire to provide evidence on its probability of success on the merits, at no time did it submit affidavits or make offers of proof on the matter of irreparable injury. Under these circumstances the district court could fairly conclude that further hearings to take evidence were unnecessary to decide the motion before it.
 
 IV
 
 18
 We now come to the February 12, 1981 order that the Town reimburse the Does for their 1979-1980 expenses according to the Department's decision "pending a final determination on the merits". The district court explained that this payment was required since 20 U.S.C. § 1415(e)(3) ("the child shall remain in the then current educational placement of such child" during review proceedings) had "been held in this case to require that John, Jr. be maintained at the Carroll School during the pendency of this litigation. Judgment and Memorandum of Decision November 19, 1980."[9]
 
 
 19
 We think the district court misinterpreted the intent of 20 U.S.C. § 1415(e) (3). As we read this section, it provides only that children shall remain "in the then current educational placement" (emphasis added) during placement disputes. Here no one proposed to change Doe Jr.'s placement at the Carroll School; rather the dispute was over who should bear a portion of the expenses of that placement until final judgment could be rendered. We therefore think that the district court should have handled the petition for reimbursement of the Does as a petition for preliminary injunction and applied the traditional criteria. Had it done so, we believe that neither the Department nor Mr. Doe could be found to have made a showing of irreparable harm after the Town undertook on February 9 to pay all but the Does' first year expenses. Mr. Doe had displayed his ability to pay these sums. The record before us contains no demonstration of impending injury that final judgment, should it be in his favor, would be unable to redress.
 
 
 20
 If by its reference to its decision of November 19, 1980 the district court meant to make a finding that the Does and the Department had a likelihood of success on the merits, we think that this also was error. We have vacated this November 19 judgment in part II of this opinion. Moreover, that judgment purported only to consider state law and thus had not determined what the different federal provisions might dictate in this case. Any finding on the likelihood of success would have required a hearing on the evidence that the parties proposed to introduce in the § 1415(e)(2) review.
 
 
 21
 Our result in this case might be thought anomalous because we have affirmed a refusal to stay the Department's order but have reversed an order to enforce it. Any anomaly is superficial. The refusal to apply interim judicial powers of equity on either side leaves the field open to extrajudicial resolution. Here that resolution has produced an apparently fair division of the burdens of delay, in that neither side to date has shown the threat of irreparable injury that provides the rationale for interim relief. See Leubsdorf, The Standard for Preliminary Injunctions, 91 Harv.L.Rev. 525, 540-48 (1978). If on remand further questions as to preliminary relief arise, we are confident that the district court will expedite trial on the federal count so that the underlying merits of this suit may be clarified. See Fed.R.Civ.Proc. 65(a)(2). See also id. 65(c) (requiring appropriate security be posted should preliminary injunction issue).
 
 
 22
 The district court's grant of summary judgment is vacated, as is its order of February 12, 1981. Its denial of preliminary injunction is affirmed. The case is remanded with instructions that the second count of the Town's complaint be dismissed and that trial proceed on the first count. No costs.
 
 
 
 *
 Of the District of Massachusetts, sitting by designation
 
 
 [1]
 " § 1415. Procedural safeguards
 (a) Any State education agency (and) any local educational agency...which receives assistance under this part ...shall establish and maintain procedures in accordance with subsection (b) through subsection (e) of this section to assure that handicapped children and their parents or guardians are guaranteed procedural safeguards with respect to the provision of free appropriate public education by such agencies and units.
 (b)(1) The procedures required by this section shall include, but shall not be limited to ...
 (E) an opportunity to present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child.
 (2) Whenever a complaint has been received under paragraph (1) of this subsection, the parents or guardian shall have an opportunity for an impartial due process hearing which shall be conducted by...the local education agency....
 (c) If the hearing required in paragraph (2) of subsection (b) of this section is conducted by a local educational agency..., any party aggrieved by the findings and decision rendered in such a hearing may appeal to the State educational agency which shall conduct an impartial review of such hearing. The officer conducting such review shall make an independent decision upon completion of such review....
 (e)(1)... A decision made under subsection (c) shall be final, except that any party may bring an action under paragraph (2) of this subsection.
 (2)...(A)ny party aggrieved by the findings and decision under subsection (c)... shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy. In any action brought under this paragraph the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.
 (3) During the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents or guardian otherwise agree, the child shall remain in the then current educational placement of such child...." (Emphasis added.)
 Since § 1415(a) applies only to state and local educational units that "receive( ) assistance under this subchapter", we understand the receipt of such assistance to be a jurisdictional prerequisite to review under § 1415(e) (2), and, therefore, a matter to be pleaded in the complaint. See Fed.R.Civ.Proc. 8(a). The Town's original complaint satisfied this requirement only indirectly by appending and incorporating the Department's decision, which indicates that the federal statute, P.L. 94-142, and its accompanying regulations apply in this case. See 45 C.F.R. § 121a.2 (1979) ("Applicability (of regulations) to State, local, and private agencies"). The fact of federal funding is confirmed by the subsequently filed papers in No. 81-1112. They show that the Town has amended its complaint to add a count reciting that a Department official "held a hearing on whether to freeze federal funds for aid to the handicapped to Plaintiff under Title 20 U.S.C. § 1414(b)(2)(A)."
 A more direct statement of jurisdiction from the outset would have been preferable.
 
 
 [2]
 This count also asserted jurisdiction based on "the provisions of Title 42 U.S.C. § 1983 and Title 28 U.S.C. § 1343 and Title 20 U.S.C. § 1331...."
 
 
 [3]
 The Town moved that this order be stayed pending our decision. Since we rule on the merits of this issue in part IV of this opinion, the question of stay is now moot
 
 
 [4]
 We need not decide whether the federal review provision would have preemptive force when the only aggrieved party seeks relief solely under state law since here the Town has invoked 20 U.S.C. § 1415. It is possible that an aggrieved party might for financial or other reasons be satisfied with the more limited judicial review available under state law; conceivably the federal policy embodied in § 1415 would not be infringed when willingly waived by its beneficiary
 
 
 [5]
 Mr. Doe urges that the Town should not be allowed to invoke 20 U.S.C. § 1415(e)(2) as "an( ) aggrieved party" since an earlier section, id. at § 1415(a), refers only to "handicapped children and their parents and guardians ...." The district court rejected this narrow construction of § 1415(e)(2)'s "any party aggrieved" language as ignoring "the explicit and unambiguous language of the statute ...." We affirm this reasoning. We also note that to confine a town to review under state law could lead to one-sided results if the town's opponents could race to a federal review that is preemptive or otherwise normally controlling as res judicata by virtue of its more scrutinizing character
 
 
 [6]
 The Town asserts that the net marginal cost of withdrawing John Doe, Jr. from the regular public program and enrolling him in the special public program at Pine Glen is negligible
 
 
 [7]
 According to the Town, the Carroll School costs a total of $6486 a year, of which the state will reimburse to a maximum of $2795. The Town stated that this maximum reimbursement is "rarely if ever reached" but did not disclose the extent of the typical shortfall. Since the burden of establishing irreparable injury rests with the party seeking the injunction, from this lack of allegation we presume that the shortfall typically is not significant
 
 
 [8]
 Mr. Doe also stated that he "took the financial risk" of transferring Doe, Jr. to the Carroll School. We think this mention of risk refers to the fact Mr. Doe's ultimate success in, and hence right to reimbursement from, the Department's appeal process was uncertain. See Amherst-Pelham Regional School Comm. v. Dep't of Educ., 376 Mass. 480, 493, 381 N.E.2d 922, 931 (1978) (parents "assumed a financial risk that the bureau would recommend a different (educational) placement" for their child)
 
 
 [9]
 Because the district court made no reference to the Does' pending motion that the Town be placed in contempt, we assume that the court intended to take no action on this motion in its February 12 order