**STACEY G., by her next friends, WILLIAM AND JANE G., Plaintiffs-Appellees,**

v.

**PASADENA INDEPENDENT SCHOOL DISTRICT, Defendant-Appellant.**

No. 81–2355.

United States Court of Appeals, Fifth Circuit.

Jan. 20, 1983.

Donald G. Henslee, David P. Ryan, Austin, Tex., for defendant-appellant.

Sarah A. Scott, Brooklyn, N.Y., Annie S. Garcy, Houston, Tex., for plaintiffs-appellees.

Before GARZA, TATE and WILLIAMS, Circuit Judges.

TATE, Circuit Judge:

Stacey G., a minor severely handicapped by an autistic/mentally retarded condition, brought this suit through her parents as next friends against various Texas state and local agencies and officers. Questioning various deficiencies in Texas placement procedures and decisions, the thrust of the suit was to obtain for Stacey a free, appropriate public education that adequately dealt with the handicapped child's mental and emotional handicaps, as mandated by federal and Texas statute.

This appeal by one of the defendants, the Pasadena Independent School District ("Pasadena"), concerns only the narrow issue of whether the district court properly granted a preliminary injunction on August 9, 1981, ordering Pasadena to pay "[p]ending resolution of this cause" the costs of a private school in which Stacey had been placed by her parents.[1] Pasadena contends (1) that the district court erred as a matter of law in holding that Texas regulation *required* it to pay the costs of private schooling during the pendency of the judicial review of the handicapped child's placement procedures and (2) that, if the preliminary injunction was indeed issued in the exercise of the court's equitable powers, no

irreparable harm is shown that would justify this injunctive relief. At oral argument, both parties agreed that, if the grant of the injunction is reversed on the first ground, then a remand would be appropriate for findings of fact and conclusions of law as to whether injunctive relief was properly granted under general equitable powers; for the district court's order (although perhaps implying such a basis) did not explicitly set forth the findings of fact and conclusions of law that constituted the grounds for granting a preliminary injunction, as required by Fed.R.Civ.P. 52(a).

Finding that Texas regulation did not require maintaining the child at public expense in a private school placement effected by her parents, we vacate the preliminary injunction; however, we remand for further proceedings to determine whether temporary placement at public expense was warranted under the equitable powers of the court.

*Factual Background*

Stacey G., born in 1967, is a severely handicapped child. She has been enrolled in Pasadena and in private special-education programs for the mentally and emotionally retarded since the age of four, due to her low IQ score and her autistic tendencies. From the fall of 1974 through the close of the 1978–79 school year, during the normal schooling months Pasadena furnished Stacey special programs for handicapped children, based upon her undoubtedly severe mental defects and emotional disturbances. Pasadena did not then offer summer special education programs for autistic/mentally retarded/emotionally disturbed children such as Stacey, and her parents at their own expense independently placed her in a private residential facility in the summers of 1978 and 1979. In the summer of 1979, Stacey's parents had requested Pasadena to pay for this summer schooling, but the district refused.

---

1. Following this appeal from the grant of the interlocutory injunction, further proceedings were had on the merits. On September 8, 1982, the district court entered an order after comprehensive findings of fact and conclusions of law approving Stacey's placement in an individualized twelve-month highly structured educational program. The plaintiff parents, who are satisfied with the final judgment, urge that this final judgment moots the present appeal. We disagree, for reasons stated at the conclusion of this opinion.

Dissatisfied with Pasadena's program for Stacey for the 1979–80 school year, her parents maintained her in the private school at their expense during that year, since Stacey was showing improvement. However, commencing in December 1980, they attempted to secure a more adequate program from Pasadena providing residential placement at public expense. They requested a hearing, as provided by state administrative procedures, on January 21, 1981. Although the hearing commenced on February 19, 1981, due to various procedural hiatuses on the part of state officials it was still not concluded by the summer of 1981.

Alleging the inadequacies of the state procedures and the real danger of severe regression should Stacey's current placement in a structured residential program be terminated, her parents brought this suit on July 8, 1981. By this time, their insurance and means had run out, while Pasadena had no summer program. At the hearing on the preliminary injunction, the showing made indicated that state administrative placement of Stacey (for the required individualized training at public expense) could not practicably be accomplished for several months.

The district court's order granting preliminary injunctive relief was entered in the context of the prior indefinite delays in affording Stacey administrative placement, of the prospect of yet further indefinite administrative delays, of the indications that Stacey was in danger of severe regression if her placement in a highly structured training program was terminated, and of her parents' inability any longer to pay for such educational needs themselves. The district court order attempted to expedite the state administrative determinations (as to which no objection is now made), but it also required that "[p]ending resolution of this cause", Pasadena should "continue to assume the cost of maintaining Stacey at her *current* education *placement,* as . . . *required* to do so by Section 35.75.070(E)(iii) of the Texas Education Agency's Policies and Administrative Procedures for the Education of Handicapped Students." (Emphasis added.)

By its appeal, Pasadena contends that the required maintenance at public expense of a child's current "placement" during judicial review did not, in the regulatory context, contemplate payment of fees for a private school in which the child had been placed by his parents—that the "placement" contemplated was only that which had been previously officially determined by the educational agency authorized to make the placement determination.

## Legal Context

Stacey's parents had filed suit in federal district court, under 20 U.S.C. § 1415(e), to obtain a "free appropriate public education" guaranteed by the Education for All Handicapped Children Act of 1975, 20 U.S.C. § 1400 *et seq.*

This statute sets forth a program whereby a state may receive federal funding for education of handicapped children within its public school system if the state establishes a special education program that satisfies federal guidelines. To receive federal assistance, the state must "effect a policy that assures all handicapped children the right to a free appropriate public education." § 1412(a). The state must enact its own statutory plan, affording handicapped students basic educational services, that meets detailed federal criteria and is administered by local agencies. It must provide in its plan for the "participation and consultation of the parents" of the handicapped child, § 1414(a)(1)(C)(iii), and "an individualized education program (IEP) for each handicapped child," to be reviewed annually, § 1414(a)(5). The parents may initiate or protest state agency action relating to the "identification, evaluation or educational placement of the child or the provision of a free appropriate public education to the child." § 1415(b). The state educational agency must provide for an impartial due process hearing and appeal. § 1415(b), (c). A judicial remedy is provided for review of adverse administrative determinations. § 1415(e)(2).

The Texas legislature's provision for establishing and funding a comprehensive

special education program for handicapped children is contained in 1 Tex.Code Ann. (Educ.) § 16.104 (Supp.1981), and in regulations as authorized by the legislature that are issued by the State Board of Education and Commissioner of Education in the "Policies and Administrative Procedures for the Education of Handicapped Students," § 35.-71.010 *et seq.*, 19 Tex.Admin.Code § 89.201 *et seq.*

*Public Responsibility for Maintaining Handicapped Child in "Current" or "Present" Placement During Placement Hearings and Appeals Process*

The issue at hand is whether under applicable regulations the state educational agency is *"required"*—during the process of administrative and judicial review—to maintain at its expense the handicapped child's educational program at a private school in which the child had been placed by her parents, at the time the parents' objection to the proposed state-paid program provokes administrative and judicial review. The issue involves the interpretation of a federal statutory provision and of a Texas administrative regulation directed at interim placement during the review process.

The federal act provides:

During the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents or guardian otherwise agree, *the child shall remain in the then current educational placement* of such child, or if applying for initial admission to a public school, shall, with the consent of the parents or guardian, be placed in the public school program until all such proceedings have been completed.

§ 1415(e)(3) (emphasis added).[2]

Similarly, the Texas Education Agency has promulgated the following regulation:

Throughout the hearings and appeals process, the public agency *is responsible for maintaining the student in the present placement* except in cases where the safety of the student, classmates, or personnel is endangered.

"Texas Education Agency's Policies and Administrative Procedures for the Education. of Handicapped Students," § 35.75.-070(1)(E)(iii) (emphasis added).

■ As to the *federal* requirement, prior decisions and federal regulation make plain that maintenance of present placement of a handicapped child during pendency of proceedings demands only that the state maintain the financial commitment to continue to fund an educational placement that it already funded prior to the commencement of proceedings. *Town of Burlington v. Department of Education,* 655 F.2d 428, 433 (1st Cir.1981); *Monahan v. State of Nebraska,* 645 F.2d 592, 597–598 (8th Cir.1981); *Stemple v. Board of Education of Prince George's County,* 623 F.2d 893, 896–97 (4th Cir.1980) (also citing legislative history). The "placement" by the parents at the private school is not brought into question by the collateral "dispute . . . over who should bear a portion of the expenses of that placement until final judgment", and the allocation of who should pay the costs of parental private placement is simply not regulated by the cited federal provision. *Town of Burlington, supra,* 655 F.2d at 433. The purpose of that provision, § 1415(e)(3), is only to maintain the status quo while the placement-review is pending: either placement at public expense or the child's remaining in the parent-selected private school at the parents' expense. *Monahan, supra,* 645 F.2d at 598; *Stemple, supra,* 623 F.2d at 898.

Under federal regulation, the state has no general duty to pay for the private placement of handicapped children if it has provided a free appropriate education within the public schools, 34 C.F.R. § 300.403(a). The parents must pursue statutory remedies to determine if the state has in fact

---

**2.** The implementing federal regulation is set forth at 34 C.F.R. § 300.513(a), which provides that

During the pendency of any administrative or judicial proceeding regarding a complaint, unless the public agency and the parents of the child agree otherwise, the child involved in the complaint must remain in his or her present educational placement.

met its obligation and whether it is financially responsible for special education requirements. *Id.* at § 300.403(b). When the parents have made a unilateral decision to remove the child from the public system and place him or her in a private facility, the cited decisions have held that § 1415(e)(3) does not require the school system to compensate the parents for the cost of the transfer made without the state's consultation. *Accord, Foster v. District of Columbia Board of Education,* 523 F.Supp. 1142, 1145 (D.D.C.1981); *Zvi D. v. Ambach,* 520 F.Supp. 196, 203–04 (E.D.N.Y.1981).

The plaintiffs suggest that the cited decisions are distinguishable. They agree that except in part for *Burlington* (see note 3), these decisions concerned attempts to secure reimbursement of past-incurred parental expenses of private schooling, as contrasted with the present attempt to secure prospective relief pending judicial review. We do not so read these decisions. Their rationale and interpretation of the statutory provision apply alike to past-incurred expenses of private schooling for which reimbursement is sought, as well as to a claim that the statute *requires* the public agency to pay prospective costs of private schooling pending judicial review.[3]

The plaintiff parents further argue that, nevertheless, the Texas regulation, § 35.75.070(E)(1)(iii), *supra,* goes beyond the federal statute in providing that "the public agency is *responsible* for *maintaining* the student in the present placement" during the pendency of review. Construing the provision in its regulatory context, we find no intent that by it Texas intended to do more than, similarly to the federal § 1415(e)(3), to freeze the status quo as to the official placement decision and the allocation of schooling costs during the pendency of proceedings.

Examination of the background to the Texas status quo provision suggests that the state meant only to track the federal provisions. The foreword to the Texas regulations incorporated in "Policies and Administrative Procedures for the Education of Handicapped Students," *supra,* the source of this state administrative rule, states that the regulations were promulgated in "response to statutory requirements" —state statutes, federal laws and regulations. The Texas Education Agency's administrative policy giving rise to the status quo procedure lists as a reference the federal statute. Furthermore, the Texas enabling statute setting up funding and structure for special education programs, specifically provides for rulemaking and funding to permit the education agency to contract out for residential placement, *see* 1 Tex. Code Ann. (Educ.) § 16.104(k)–(*l*) (Vern. Supp.1982), so long as specific safeguards on such contracts are observed.[4] Given the state statute's emphasis on publicly-provided special education programs, as expressed by strict controls placed on state contracts with private facilities, we can read no legislative or agency intent in the administrative procedures to provide by § 35.75.-070(E)(1)(iii), the status quo provision, a requirement that the state automatically assume the costs of private placement brought about by the parents' unilateral

---

3. The clear import of *Town of Burlington's* holding, *both* as to reimbursement sought and prospective costs of private schooling, is that the statute does not *require* either to be paid; however, the decision also indicated that, under general equitable powers, a court might require prospective private schooling costs to be paid by the public agency, upon a showing of irreparable injury and other prerequisites for relief by way of preliminary injunction. 655 F.2d at 434.

4. Section 16.104(k) provides, in pertinent part, that

The rules shall provide for approval of residential placement contracts only after at least a programmatic evaluation of personnel qualifications, adequacy of physical plant and equipment, and curriculum content . . . . Rules relating to the residential contract approval process shall include provisions designed to ensure that no contract is approved which:

(1) involves the delivery of unapproved services;

(2) involves the delivery of services which the district is capable of providing or is developing the capability to provide; or

(3) is not cost-effective when compared with other alternatives.

withdrawal of the child from the public system, should the parents seek judicial review of an administrative determination as to placement (or not) into a public special education program.

We thus find that the district court erred in indicating that federal or state regulation *required* Pasadena to pay the costs of parent-chosen private schooling pending judicial review sought by the parents of placement procedures and decisions by the state agency.

■ Accordingly, we vacate the preliminary injunction insofar as based on that ground. However, we remand for the district court to make findings of fact and conclusions of law as to another ground indicated for its injunctive relief, its traditional equitable powers to consider irreparable harm and the likelihood of success in obtaining some relief on the merits.[5]

*Other Contentions*

■ The plaintiff parents argue that the present appeal from a grant of a preliminary injunction is now moot, since a final judgment has subsequently been granted that resulted in a permanent injunction affording the plaintiffs adequate relief *prospective to this final judgment* (including an additional month's private schooling at

public expense). Here, however, the final judgment did not in terms resolve the issue raised by this appeal, that is, whether preliminary injunctive relief was appropriate to require Pasadena to pay the entire interim costs of Stacey's private schooling prior to the final judgment. Unlike the decision relied upon by the plaintiffs, *University of Texas v. Camenisch,* 451 U.S. 390, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981) (appeal from preliminary injunction moot)—where the ultimate issue presented by the preliminary injunction would be decided on the merits—the issue posed by the grant of the present preliminary injunction is independent of a decision on the merits. If this preliminary injunction is ultimately held to have been improvidently granted, Pasadena is entitled to recover upon the bond the parents furnished and upon which the preliminary injunction grant was conditioned. Fed.R. Civ.P. 65(c). The issues presented by the present appeal are therefore not mooted by the final injunction granted.

The plaintiff parents also filed a motion to disqualify one of Pasadena's counsel because his actions allegedly tainted the prior state administrative proceedings of which judicial review is sought by this suit. While it is difficult to see what relief could be afforded (if indeed the grounds asserted would justify disqualification), we never-

---

5. The district court may also have based its preliminary injunctive relief, requiring Pasadena to assume the costs of Stacey's private placement, as an exercise of its general equitable powers in order to protect the plaintiff from irreparable harm and to preserve the court's power to reach a meaningful decision after trial on the merits by preventing the judicial process from being rendered futile by the defendant's pre-trial actions or refusals to act. *See* note 3 above. *See also Canal Authority of the State of Florida v. Callaway,* 489 F.2d 567, 572 (5th Cir.1974). *See generally* Wright & Miller, Fed. Practice & Procedure § 2947, at 423–24 (1973).

The "automatic preliminary injunction" provided by § 1415(e)(3) does not place a statutory bar to the district court's grant of equitable relief that may result in a change of funding of the child's placement, or a modification of the placement. As the District of Columbia District Court stated in *Cox v. Brown,* 498 F.Supp. 823, 827 (D.D.C.1980):

[Section 1415(e)(3)] is plainly designed to protect children from any retaliatory action

by the State or from any disciplinary action not commensurate with the educators' need to protect the pupils in its system. It defies comprehension to find congressional intent in this statute which would result in the denial of equitable relief to the vulnerable in an instance when the plaintiffs have been able to demonstrate the substantial likelihood that the educational authorities have failed to comply with the mandates of the Act and where patent irreparable harm will occur absent prompt judicial relief.

District courts have often granted preliminary injunctive relief with respect to special education placement or services under the Education for All Handicapped Children Act of 1975, after considering the existence of the prerequisites for such relief. *See, e.g., Espino v. Besteiro,* 520 F.Supp. 905, 913 (S.D.Tex. 1981); *Cox v. Brown,* 498 F.Supp. 823, 828–29 (D.D.C.1980); *M.R. v. Milwaukee Public Schools,* 495 F.Supp. 864, 870 (E.D.Wis.1980).

theless direct this motion to the district court for such ruling as may be appropriate on the remand.

*Conclusion*

For the reasons stated, we VACATE the preliminary injunction granted by the appealed order, and we REMAND to the district court for it to make such findings of fact or conclusions of law as may or may not justify the grant of the preliminary injunction under its equitable powers.

VACATED AND REMANDED.

JERRE S. WILLIAMS, Circuit Judge, specially concurring:

I am in full agreement with Judge Tate's opinion and with the disposition of this case by the majority of the Court. I add these few words of a precautionary nature in view of the action which we take in remanding this case.

The Congress created a far reaching and compassionate program in the Education For All Handicapped Children Act of 1975. We find in this case that under this Act, and the Texas program pursuant to it, there was no statutory obligation on the part of the Pasadena Independent School District to pay for the education of Stacey G. in a private school where she had been placed by her parents contrary to the official placement. This holding is clearly correct under the law as thoroughly developed by Judge Tate in his opinion.

I also recognize that there is an inherent power in equity in the federal courts to remedy irreparable harm in proper circumstances in cases where the harm is related to the relief which the plaintiff is requesting. In this case the court has now issued a final order which both parties find acceptable. It is fair today to say, then, that the plaintiffs prevailed at least to some extent in this case.

But I feel it essential to insert a few words of caution at this point. Congress created a new, far reaching, enlightened program to insure education for our handicapped children. I urge that the federal courts must guard against taking it upon themselves to enlarge this program and other similar programs, through claimed equitable powers. This program is not the courts' program, it is the program of Congress. Our equitable powers are not designed to take a congressional program and remake it in our image. Federal courts should be reluctant and feel firmly restricted in exercising their authority to go beyond the scope of a program such as this to enforce additional governmental obligations simply because they honestly and very properly feel sorry for the claimants.

In cases such as this, in considering the possible use of their equity powers the courts should assure themselves that they are not pushing the program beyond what was the clear intent of Congress. Our guide should be a conclusion that we fill in those interstices which Congress would have intended we fill in. Congress is bound by the necessity to engage only in general legislation. It cannot possibly conceive of all individual instances of hardship. This is properly the only justifiable foundation for the exercise of our equity power beyond the legal requirements of the statutory scheme. But that should be the limit. Restrictions based upon a showing of irreparable harm and of a likelihood of success must be carefully balanced with the concern for public interest to avoid unjustifiable expansion of the program which Congress has created.

In no sense by these observations do I here intend to prejudge this case upon remand. The circumstances involving Stacey G., and the possibility of serious retrogression of her condition without continuing education may be found to justify equitable relief in this case. All I am suggesting is that upon remand this district court must, in making the difficult evaluations necessary to decide whether equitable relief should be granted, take into account the fact that Congress has defined and enacted a program, and we have no authority to broaden it through redefinition. In the reconsideration of this case in accordance with our remand I recognize the serious responsibility of the district court to consider the circumstances involving Stacey G.,

but also to consider the interests of the public in not having its legislative programs remade by judicial action when constitutional requirements necessitating revision are not present.