Robert L. MATTHEWS and Georgia R. Matthews, Individually and as the parents of Peter D. Matthews, an infant, Plaintiffs,

v.

Gordon M. AMBACH, as the Commissioner of Education of the State of New York, and Bloomfield Central School District, Defendants.

No. CIV–81–136B(E).

United States District Court, W.D. New York.

Dec. 17, 1982.

1274

Ezra K. Katzen, Rochester, N.Y., for plaintiffs.

Kenneth J. Pawson, Albany, N.Y., for Ambach.

William Goldman, Auburn, N.Y., for School Dist.

## MEMORANDUM and ORDER

ELFVIN, District Judge.

Plaintiffs commenced this action under the Education of All Handicapped Children Act ("the EAHCA"), 20 U.S.C. § 1401 *et seq.*, on behalf of Peter, their 17 year-old deaf son. They seek to compel their local school district (defendant Bloomfield Central School District) and the New York State Commissioner of Education ("the Commissioner") to pay the expense of Peter's education at the Clarke School for the Deaf ("Clarke") in Massachusetts. They claim that defendants' failure to bear such expense deprives Peter of a free appropriate public education in violation of the EAHCA. Defendants have moved to dismiss the Complaint on various grounds, and plaintiffs have cross-moved for summary judgment based on the record of administrative proceedings conducted by the school district and the Commissioner.

Clarke is a residential school located in a rural environment similar to that of Peter's home town, Holcomb, N.Y.[1] Clarke takes a totally oral approach to the teaching of deaf students. All classes are taught orally without the use of sign language, and students are also expected to communicate in the residential setting by speaking rather than by signs. Peter began attending Clarke in the 1973–74 school year and continues to do so. To date, plaintiffs have paid all of the expenses of Peter's education at Clarke.

In 1977 plaintiffs requested the school district's Committee on the Handicapped ("COH") to evaluate Peter and to recommend his placement at Clarke. On June 11, 1979[2] the COH recommended that Peter be enrolled in a state-approved oral school for the deaf. Because the COH did not recommend any specific placement, plaintiffs requested that a hearing be conducted before an impartial officer. A hearing was held June 25, 1979 and the hearing officer determined that the COH's recommendation was appropriate. Plaintiffs appealed this determination to the Commissioner, who issued a decision November 5, 1979 that the appeal was premature because plaintiffs had not then sought an appointment for Peter in a state-approved oral school for the deaf.

In April, 1980 plaintiffs visited the Lexington School ("Lexington") in Queens County, N.Y. in order to determine whether Peter could and/or should be enrolled there. Peter was approved for placement in Lexington by both the school and New York's Department of Education. Nevertheless, plaintiffs were opposed to enrolling Peter at Lexington because of the school's urban setting, its lack of residential facilities on the weekend and the fact that students are permitted to communicate by sign language outside of the classroom. The school district's COH determined May 11, 1980 that "Peter should definitely continue at the Clarke School" and plaintiffs were notified

of this determination June 2, 1980. The school district's Board of Education rejected the COH's recommendation June 18, 1980 on the grounds that Clarke is not a New York-approved school for the deaf and so notified plaintiffs in a letter dated June 24, 1980. Instead, the school district indicated that Lexington would be an appropriate placement. Upon plaintiffs' request, a second impartial hearing was conducted August 22, 1980. In a decision dated September 16, 1980 the hearing officer concluded that Clarke "qualifies with an appropriate program in the 'oral' method, for Peter, *and also qualifies as least restrictive.*" (Emphasis added.) However, the hearing officer also indicated his belief that he could "not recommend attendance of a handicapped child at a school not approved by the [New York] State Education Department" and therefore concluded that the Board of Education's decision to reject Peter's placement at Clarke was proper.

Plaintiffs appealed these findings to the Commissioner, who issued a written decision December 23, 1980. The Commissioner's decision is rather ambiguous and states that the plaintiffs' appeal would be "sustained in part." Essentially, the Commissioner determined that, if Peter in fact requires a residential placement, Lexington would offer an appropriate program for him. In this regard, the Commissioner stated there is "no real difference" between "the programmatic features" of Lexington and Clarke. However, the Commissioner also concluded that the school district had failed to demonstrate that placement at Lexington would meet Peter's educational needs because "those needs were not detailed and because almost no consideration was given [at the hearing] to the program at [Lexington]." Therefore, the Commissioner directed the school district (at plaintiffs' request) to "reconvene its [COH] for the purpose of specifically identifying [Peter's] needs and the corresponding program

---

**1.** Holcomb is apparently located within the local school district.

**2.** It is unclear what proceedings (if any) occurred between plaintiffs' initial request in

1977 that the COH recommend placement at Clarke and the COH's recommendation issued June 11, 1979.

components which would meet those needs, and recommending an appropriate program * * *." This decision forms the basis for the current action.

It should also be noted that Clarke has applied to the Commissioner for placement on New York's list of private schools which are approved for reimbursement for educating handicapped children. In a letter dated December 21, 1978 Assistant Commissioner Lou Grumet informed Clarke that its application for such approval had been denied because the "least restrictive environment" for education of a handicapped child would be the "environment closest to the child's home." The letter implicitly suggests that a placement in New York would always be less restrictive than a placement outside New York because the in-state placement would be closest to the student's home. Clarke re-applied for approval by the Education Department in August, 1980. This application was also denied in a letter dated September 22, 1980 from Grumet which stated in part:

"* * * New York State has taken seriously the federal mandates that children with handicapping conditions be placed in the least restrictive environment. This environment is the one closest to the child's home.

"While this does not preclude out-of-state placements, I believe that New York State's excellent and comprehensive school system for deaf and blind children provides appropriate places for New York children within the least restrictive environment. Consequently, I think that as a practical matter there would be few if any recommendations for placements of deaf children out of New York State. * * *"

In his decision of December 23, 1980 the Commissioner stated that neither the impartial hearing nor the appeal to the Commissioner was a proper forum for determining whether Clarke should be approved by the Education Department.

The EAHCA provides federal grants-in-aid to support education of the handicapped by the states. In order to qualify for such assistance, a state must meet a number of requirements. The most basic requirement is that the state maintain "a policy that assures all handicapped children the right to a free appropriate public education." 20 U.S.C. § 1412(1). The determination whether an individual is handicapped and the development of an "individualized education program" for such individual is left, as an initial matter, to the local educational agency. 20 U.S.C. §§ 1401(19), 1412(4), 1414(a)(5).[3] The state must provide an opportunity to the parents to present complaints about "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(1)(E). The EAHCA also requires that the parent be given an opportunity to have an impartial hearing with respect to such complaints. 20 U.S.C. § 1415(b)(2). If the hearing is held by the local educational agency, an appeal to the state educational agency must be available. 20 U.S.C. § 1415(c). An action to review a final administrative decision may be brought in federal district court. 20 U.S.C. § 1415(e)(2).

In New York a child is classified and his individualized educational program is developed by the COH established in the local school district. Education Law § 4402.1. A parent who is dissatisfied with the recommendation of the COH may obtain a hearing before a hearing officer appointed by the Board of Education. Education Law § 4404.1. A decision of the Board of Education made pursuant to such a hearing may be appealed to the Commissioner. Education Law § 4404.2.[4]

---

**3.** A "local educational agency" is a "public board of education or other public authority legally constituted within a State for either administrative control or direction of, or to perform a service function for, public elementary or secondary schools * * *." 20 U.S.C. § 1401(8).

**4.** Section 4404.2 provides:

"The commissioner of education shall review and modify, in such cases and to the extent

The EAHCA defines a "free appropriate public education" as:

"* * * special education and related services which (A) have been provided at public expense, under public supervision and direction, and without charge, (B) meet the standards of the State educational agency, (C) include an appropriate preschool, elementary, or secondary school education in the State involved, and (D) are provided in conformity with the individualized education program * * *." 20 U.S.C. § 1401(18).

The key element in the provision of a free appropriate public education is the student's individualized education program ("IEP"), which is defined as:

"* * * a written statement for each handicapped child developed in any meeting by a representative of the local educational agency * * *, the teacher, the parents * * *, and, whenever appropriate, such child, which statement shall include (A) a statement of the present levels of educational performance of such child, (B) a statement of annual goals, including short-term instructional objectives, (C) a statement of the specific educational services to be provided to such child, and the extent to which such child will be able to participate in regular educational programs, (D) the projected date for initiation and anticipated duration of such services, and (E) appropriate objective criteria and evaluation procedures for determining, on at least an annual basis, whether instructional objectives are being achieved." 20 U.S.C. § 1401(19).

The EAHCA also requires that, to the maximum extent appropriate, handicapped children be educated with children who are not handicapped and that removal of handicapped children from the regular educational environment occur only when "the nature or severity of the handicap is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily * * *." 20 U.S.C. § 1412(5)(B).

Regulations promulgated pursuant to the EAHCA require the state and local educational agencies to provide "a continuum of alternative placements to meet the needs of handicapped children * * *." 45 C.F.R. § 121a.551(a). The required continuum of alternative placements must include instruction in regular classes, special classes, special schools, home instruction, and instruction in hospitals and institutions. 45 C.F.R. § 121a.551(b)(1). A child's placement must be determined at least annually, be based on his or her IEP and be as close as possible to his or her home. 45 C.F.R. § 121a.552(a). The placement must also be based on a number of considerations, including the child's "social or cultural background, and adaptive behavior * * *." 45 C.F.R. § 121a.533(a)(1).

It is unclear whether the defendant school district has developed an IEP for Peter.[5] However, an "Educational Plan" dated July 14, 1980 by Clarke states that Peter's educational objectives include the improvement of "the comprehension and use of both oral and written language," the integration of language skills "so that they become part of the student's spontaneous language," and "to maintain and improve speech intelligibility and auditory training." Plaintiffs allege that Peter's placement at Lexington would not provide him with an

---

that the commissioner deems necessary, in order to properly effectuate the purposes of [Article 89 of the Education Law], any determination of the board of education or trustees of a school district relating to the determination of the nature of a child's handicapping condition, selection of an appropriate special educational program or service and the failure to provide such program and require such board to comply with the provisions of such modification in the same manner provided for the taking of appeals pursuant to [section 310 of the Education Law].

Section 310 of the Education Law generally permits a person who is aggrieved by the decision of a local school district to "appeal by petition to the commissioner of education who is hereby authorized and required to examine and decide the same * * *."

5. Plaintiffs have referred to the Educational Plan developed for Peter by Clarke as his IEP but have not specifically identified any IEP developed by the local school district.

**1278**

appropriate education. They claim that Peter must be placed in an educational environment such as Clarke which utilizes a totally oral approach. Because Lexington permits students to communicate by sign language outside of the classroom, plaintiffs claim that placement at Lexington would not comply with Peter's IEP.

Plaintiffs further allege that Peter's placement at Lexington would violate the EAHCA's general requirement that the education of handicapped children occur in the least restrictive environment. They place great emphasis on the similarity of the rural environment of Clarke to that of Peter's hometown. In this regard, they argue that placement in an urban environment such as at Lexington would be highly upsetting and stressful for Peter. Moreover, plaintiffs argue that Peter is able to participate in extracurricular activities at Clarke (such as maintaining a part-time job) but that his opportunities to do so at Lexington would be limited. Peter's home is located approximately the same distance from Clarke (295 miles) as from Lexington (320 miles). However, plaintiffs argue that, because Lexington does not provide living accommodations on weekends, Peter would be put to the substantial burden of travelling home every weekend. Finally, plaintiffs object to Peter's placement at Lexington because it is a complete high school. The educational program at Clarke is intended to enable deaf students to attend mainstream high schools; thus, plaintiffs hope that by continuing at Clarke, Peter will be able to attend his local high school within only a few years.

In this action, plaintiffs seek to recover the costs of sending Peter to Clarke from the 1973–74 school year to present. They also seek an order directing defendants to make payments for Peter's continued attendance at Clarke. Defendants' first argument in support of their motions to dismiss is that money damages may not be awarded in an action under the EAHCA.

Additionally, the Commissioner argues that an award of damages against him is barred by the Eleventh Amendment to the United States Constitution.

Generally, the EAHCA provides that the court may "grant such relief as [it] deems appropriate." 20 U.S.C. § 1415(e)(2). Nevertheless, there is a split of authority on the question whether such relief may include money damages, such as costs and expenses incurred in providing an appropriate educational placement for a handicapped student.[6] Damages have been held permissible under the EAHCA in *Gregg B. v. Board of Ed. of Lawrence School Dist.,* 535 F.Supp. 1333 (E.D.N.Y.1982), *Tatro v. State of Texas,* 516 F.Supp. 968, 977–78 (N.D.Tex.1981), *Monahan v. State of Neb.,* 491 F.Supp. 1074, 1094 (D.Neb.1980), modified 645 F.2d 592 (8th Cir.1981), and *Boxall v. Sequoia U. High Sch. Dist.,* 464 F.Supp. 1104, 1111–12 (N.D.Cal.1979), but were disallowed in *Anderson v. Thompson,* 658 F.2d 1205, 1214 (7th Cir.1981), *Stemple v. Board of Ed. of Prince George's Cty.,* 623 F.2d 893 (4th Cir.1980), *cert. denied* 450 U.S. 911, 101 S.Ct. 1348, 67 L.Ed.2d 334 (1981), *Campbell v. Talladega Cty. Bd. of Ed.,* 518 F.Supp. 47, 56–57 (N.D.Ala.1981), and *Miener v. State of Mo.,* 498 F.Supp. 944 (E.D.Mo.1980).

I am persuaded by the analysis in *Monahan v. State of Neb., supra,* and *Tatro v. State of Texas, supra,* that money damages may be awarded in an action under the EAHCA, at least to the extent of reimbursement for tuition and expenses related to providing an appropriate educational placement for the handicapped child. The statute's language authorizing the court to fashion such relief as it determines to be "appropriate" grants a substantial amount of discretion to the court. A limitation preventing the court from awarding any monetary damages whatsoever should not be lightly inferred.

---

**6.** It is generally recognized that damages for emotional suffering or future lost earnings may not be awarded in an action under the EAHCA. *Loughran v. Flanders,* 470 F.Supp. 110

(D.Conn.1979). However, in the present case, plaintiffs have requested only an award of damages representing amounts expended by them in sending Peter to Clarke.

The EAHCA's legislative history is of little probative value concerning the question whether Congress intended to authorize an award of money damages. Sen. Conference Rep. No. 94–455 states that, in an action under the EAHCA, the court would be authorized to grant "*all* appropriate relief." U.S.Code Cong'l and Admin. News, 94th Cong., 1st Sess., 1975, 1425, 1480, at 1503 (emphasis added). In *Monahan v. State of Neb., supra,* at 1094, and *Boxall v. Sequoia U. High Sch. Dist., supra,* at 1112, such language was taken to indicate a Congressional intent to allow money damages. However, the court in *Anderson v. Thompson, supra,* at 1211–12, interpreted this portion of the legislative history to mean only that the court "could adopt the program offered by the school district or the program advocated by the parents, or that [it] could take any other action and devise any program which in [its] view would ensure an appropriate individualized educational program." Similarly, the court noted that the sponsors of the legislation had failed to mention that monetary relief could be obtained under the EAHCA. *Anderson v. Thompson, supra,* at 1212. Thus, the *Anderson* court concluded that "[t]he legislative history of the [EAHCA] is silent on the question of whether a damage remedy was intended." *Id.,* at 1211.

Nevertheless, there is no clear expression of Congressional intent *not* to permit an award of money damages in an action under the EAHCA. Certainly, the language of the statute is sufficiently broad to encompass such an award. Indeed, the most common type of "relief" awarded by courts is money damages. In the absence of any clear indication to the contrary, the EAHCA must be taken to speak for itself. As the United States Supreme Court has stated, "* * * the starting point for interpreting a statute is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Consumer Product Safety Comm'n v. GTE Sylvania,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980).

Despite this general rule of statutory construction and the EAHCA's broad language authorizing such relief as the court deems appropriate the court in *Anderson, supra* at 1213, indicated its belief that "[a] damage remedy is not * * * generally consistent with the goals of [the EAHCA]." The court suggested that the possibility that a school district might be required to pay money damages if its decision or recommendation concerning placement of a handicapped student was later determined to be erroneous would impinge on the school's discretion. *Anderson v. Thompson, supra,* at 1213. I find this reasoning unpersuasive.

The purpose of the EAHCA is "to assure that all handicapped children have available to them a free appropriate public education and related services designed to meet their unique needs." *Sherry v. New York State Ed. Dept.,* 479 F.Supp. 1328, 1335 (W.D.N.Y. 1979). It is difficult to imagine a better "fit" between such a statutory purpose and an award of damages limited to the amount of expenses incurred in providing an appropriate education for a handicapped student in the event that a school district has failed to satisfy its obligation to provide such an education. Moreover, *if* the school district is found to have breached its obligation to provide Peter with a free appropriate public education by refusing to pay the cost of his education at Clarke, a retroactive award of tuition and expenses will merely put the school district in the same net position it would have been in had it complied with the EAHCA all along. In such circumstances, I see little reason to believe that the school district's exercise of discretion will be significantly curtailed by a potential award of such minimal damages.[7] *See, Gregg B. v. Board of Ed. of Lawrence School Dist., su-*

---

**7.** If plaintiffs herein sought to recover such damages as might be available in a general tort action, I might be persuaded by *Anderson's* concerns over unduly restricting a school district's exercise of its discretion. However, an award of damages limited to plaintiffs' expenses in sending Peter to Clarke will not in any sense "penalize" the school district for some error in judgment committed by it.

pra at 1339. The defendants may also be assured that their professional judgments and opinions will not be treated lightly by this court.

Moreover, in *Gregg B. v. Board of Ed. of Lawrence School Dist., supra* at 1338, the court held that the plaintiffs would be entitled to reimbursement for tuition expenses incurred in sending their son to an out-of-state school if the defendant school district had in bad faith violated the procedural requirements of the EAHCA. Although the record is somewhat unclear in the present case, there appears to have been a two-year delay between plaintiffs' initial request to have Peter placed at Clarke and the COH's initial recommendation to enroll him at a state-approved oral school for the deaf. This delay may be of such a nature as to have been a bad faith violation of the procedures established by the EAHCA so as to permit plaintiffs to be reimbursed under *Gregg B.*

Defendants suggest that plaintiffs' claim for money damages must be dismissed under *Stemple v. Board of Ed. of Prince George's Cty., supra. Stemple* involved a handicapped student who had been enrolled in a public school program. However, the student's parents became dissatisfied with the public school program and therefore enrolled her in a private school. One month later, the student's parents requested the school district to reimburse them for the expenses of sending their daughter to the private school. In affirming the district court's dismissal of plaintiff's claim for such reimbursement, the court relied upon 20 U.S.C. § 1415(e)(3), which generally requires that, during the pendency of administrative proceedings concerning the child's educational placement, the child must remain in his or her then current educational placement. The court held that the parents' failure to maintain the child's placement in the public school pending resolution of their complaints regarding such placement "negates any right on [their] part * *

to elect unilaterally to place their child in private school and recover the tuition costs thus incurred." *Stemple v. Board of Ed. of Prince George's Cty., supra,* at 897.

In the present case, plaintiffs did not violate the EAHCA's general requirement that a handicapped student be maintained in his current educational placement pending the completion of administrative proceedings. Peter began attending Clarke in 1973, some four years prior to his parents' initial request to have the school district pay the expense of sending Peter to Clarke or provide some appropriate educational program. Peter's "current" placement at the time administrative proceedings were begun was at Clarke. In *Stemple,* the student had been attending private school for only one month when his parents requested reimbursement. Thus, in *Stemple,* the parents had apparently attempted to circumvent the procedures prescribed by the EAHCA; no such showing has been made in the present case.[8]

■■■ However, I am persuaded by the Commissioner's argument that the Eleventh Amendment prohibits an award of money damages against him. Generally, the Eleventh Amendment bars a suit for money damages against a state employee for money that will be paid out of the state treasury unless the state consents to the suit. *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Plaintiffs do not contend that any liability ultimately imposed upon the Commissioner will not be paid out of the state treasury, but they do argue that New York has consented to be sued for money damages by receiving funds from the federal government under the EAHCA. A state will be found to have waived its protection under the Eleventh Amendment only when it does so " 'by the most express language or by such overwhelming implications from the test as [will] leave no room for any other reasona-

---

8. In this respect, the facts of this case are akin to *Anderson* rather then to *Stemple.* The *Anderson* court itself recognized that *Stemple* was distinguishable from the case before it for the same reasons that I find *Stemple* is not controlling herein. *See, Anderson v. Thompson, supra,* at 1209.

ble construction.'" *Edelman v. Jordan, supra,* at 673, 94 S.Ct. at 1360, quoting *Murray v. Wilson Distilling Co.,* 213 U.S. 151, 171, 29 S.Ct. 458, 464, 53 L.Ed. 742 (1909). *See also, Florida Dept. of Health v. Fla. Nursing Home Assn.,* 450 U.S. 147, 150, 101 S.Ct. 1032, 1034, 67 L.Ed.2d 132 (1981) (*per curiam*). New York's receipt of funds under the EAHCA can not realistically be said to constitute such a clear waiver of the Eleventh Amendment. *See, Ezratty v. Com. of Puerto Rico,* 648 F.2d 770, 776–77 (1st Cir.1981). The Eleventh Amendment does not apply with respect to the defendant school district, however. *See, Mt. Healthy City Board of Ed. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). Thus, I conclude that plaintiffs may, upon an appropriate showing, obtain an award of damages based on expenses incurred in connection with Peter's attendance at Clarke against the school district but not against the Commissioner. *But, see, Parks v. Pavkovic,* 536 F.Supp. 296 (N.D.Ill.1982).

■ Defendants' next contention is that the plaintiffs have failed to state a claim upon which relief can be granted because Clarke has not been approved by the Commissioner for reimbursement for instruction of handicapped children. Undoubtedly, the Commissioner is empowered by state law to approve or disapprove out-of-state schools for education of handicapped children. *See,* N.Y. Education Law §§ 4401.2.h, 4402.2.-b.(2). This authority is recognized by the EAHCA. *See,* 20 U.S.C. § 1413(a)(4)(B)(ii). However, the Commissioner's decision not to approve Clarke for placement of handicapped children may not be upheld if such decision is arbitrary and capricious. *See, e.g., Bd. of Ed. of City of Rochester v. Nyquist,* 48 N.Y.2d 97, 103, 421 N.Y.S.2d

853, 856, 397 N.E.2d 365, 368 (1979). Because the EAHCA permits a court to award such relief as it determines to be "appropriate," 20 U.S.C. § 1415(e)(2), I conclude that an action under the EAHCA provides plaintiffs with a proper method of determining whether the Commissioner's refusal to approve Peter's placement at Clarke is arbitrary and capricious. Thus, the mere fact that Clarke has not been approved by the Commissioner does not necessarily preclude plaintiffs from maintaining the current action.[9] *See also, Gregg B. v. Board of Ed. of Lawrence School Dist., supra* (in an action to recover amounts expended by parents to send handicapped student to an out-of-state school which was not approved by the Commissioner, that defendant school district's motion for summary judgment was denied in part).

■ Defendants also suggest that the Complaint is "time-barred" because plaintiffs had not sought judicial relief prior to the "current" [i.e., the 1980–81] school year. This contention does not appear to be a true statute of limitations defense, but rather appears to be based on plaintiffs' failure to present any complaint concerning Peter's educational placement to the school district prior to 1980–81. Defendants' argument in this regard is persuasive, at least insofar as school years prior to 1977–78 are concerned. Plaintiffs first requested the school district to pay for Peter's education at Clarke in 1977–78. Thus, for the school years 1973–74, 1974–75, 1975–76, and 1976–77, this action cannot be characterized as an "action with respect to [a] complaint presented pursuant to [20 U.S.C. § 1415]" within the meaning of the EAHCA, 20 U.S.C. § 1415(e)(2). Therefore, the Complaint must be dismissed with respect to school years prior to 1977–78.

9. In order to succeed on the merits of the case, plaintiffs will be required to show that the Commissioner's refusal to approve Clarke is arbitrary and capricious. Because I have concluded that monetary damages may be awarded against the school district but not against the Commissioner, a somewhat anomalous situation arises due to the fact that the school district's refusal to pay the costs of Peter's attendance at Clarke was based on the Commissioner's decision not to approve Clarke.

Specifically, *the school district* may be required to pay damages which were actually caused by some arbitrary decision by the *Commissioner.* While such a result may appear unjust, there would be no real damage or harm done to the school district by requiring it reimburse plaintiffs for the costs of Peter's education at Clarke. Rather, if plaintiffs ultimately succeed on the merits, the school district would merely be in the same position it would have been in had it paid for Peter's education all along.

Defendants' final contention in support of their motion to dismiss is that plaintiffs have failed to exhaust administrative remedies which are available to them. This contention is based on the Commissioner's decision dated December 23, 1980 which directed the school district to reconvene its COH to specifically identify Peter's educational needs and to recommend an appropriate program for him. Rather than pursuing such relief from the school district and its COH, plaintiffs commenced the current action.

■ Generally, exhaustion of the remedies available under New York's Education Law is a prerequisite to commencement of an action under the EAHCA. *Riley v. Ambach,* 668 F.2d 635 (2d Cir.1981). Exhaustion is not required, however, "if adequate and speedy state remedies are not available." *Jose P. v. Ambach,* 669 F.2d 865, 869 (2d Cir.1982). Although I am not fully convinced by plaintiffs' contentions that further proceedings involving the school district, the COH and the Commissioner would be futile, neither am I persuaded that plaintiffs' failure to pursue such proceedings prior to commencing this action should result in dismissal. Rather, plaintiffs will be required to undergo additional administrative proceedings during the course of which this action will be stayed.

■ Although the Commissioner's December, 1980 decision is itself rather ambiguous, the Commissioner properly found that the record so far developed with respect to Peter's educational needs is inadequate to reach any definite conclusions concerning his proper placement. For example, the Commissioner correctly pointed out that the hearing conducted August 22, 1980 focused almost exclusively on the educational program at Clarke without any significant consideration of the Lexington program.[10] The Commissioner was also correct in noting that the current record provides no basis for concluding that Peter requires a residential placement.

Other deficiencies in the record are also apparent. Plaintiffs place great emphasis on the contrast between Clarke's rural environment and Lexington's urban setting. Yet, Peter's IEP or its equivalent does not suggest that his educational needs cannot be met by a school in an urban surrounding. Based on the current status of the record, plaintiffs' concerns over Peter's placement in a school in an urban environment find little support in Peter's specific educational needs. Moreover, plaintiffs contend that Lexington would not be an appropriate placement for Peter because it permits students to communicate by sign outside of the classroom. Nevertheless, there has been no showing regarding the specific impact such a program would have on Peter's educational development. Similarly, travel between Lexington and Peter's home every weekend would constitute a substantial burden, but it is unclear how such travel would affect Peter's education. While it is also significant that the general approach taken by Clarke to the education of deaf students is to prepare them for "mainstreaming" into regular high schools, there has been no indication that Peter could not be mainstreamed if he were to attend Lexington.[11]

10. Given this observation, however, it is unclear how the Commissioner could have concluded that "[i]f it is correct that [Peter] needs a residential program then the program [at Lexington] offered by the school district would meet his educational needs."

11. Resolution of these issues is necessary to determine whether the relief sought by plaintiff exceeds the defendants' obligations under the EAHCA. *Board of Educ., Etc. v. Rowley,* —— U.S. ——, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982), declared that the EAHCA does not require the recipient of federal funds to maximize the potential of each handicapped child. Rather the obligation to provide a free appropriate public education is satisfied by the provision of "personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction. Such instruction and services must be provided at public expense, must meet the State's educational standards, must approximate the grade levels used in the State's regular education, and must comport with the child's IEP." *Id.,* 102 S.Ct. at 3049.

It is true that the court restricted its analysis to the case of a child who is "receiving substantial specialized instruction and related services, and who is performing above average in the

These uncertainties should be addressed, at least initially, by the school district and the Commissioner. Administrative proceedings with respect to such questions will enable the court to focus directly on Peter's specific educational needs and the ability of Clarke, Lexington or some other placement to satisfy such needs. Thus, the overall purposes of the exhaustion doctrine will be served by requiring the parties to conduct additional administrative proceedings. *See, Riley v. Ambach, supra,* at 640. Moreover, upon conducting more focused proceedings concerning Peter's educational placement, the parties may be able to agree on an appropriate placement without further intervention by the court.

I reject defendants' contention that plaintiffs' failure to pursue the further proceedings ordered by the Commissioner should result in outright dismissal of their Complaint. Plaintiffs have apparently been attempting to have the school district provide an appropriate educational placement for Peter since 1977. They claim that they have been unable to do so, despite two appeals to the Commissioner. In such circumstances, it is doubtful that resort to the further proceedings directed by the Commissioner would provide them with "adequate and speedy" relief. Indeed, the numerous deficiencies in the record developed so far strongly suggest that resort to further administrative proceedings would have been futile in the absence of judicial supervision of such proceedings.

The same deficiencies in the record which prompt me to direct further administrative proceedings also require me to deny plaintiffs' motion for summary judgment. The standard for summary judgment is, of course, a strict one. See, *Schwabenbauer v. Board of Ed.,* 667 F.2d 305, 313–14 (2d Cir.1981); *American Intern. Group, Inc. v. London Am. Intern.,* 664 F.2d 348, 351 (2d Cir.1981). The current record in the case is simply inadequate to support plaintiffs' motion.

Based on the foregoing discussion, defendants' motions to dismiss are hereby ORDERED granted with respect to plaintiffs' first, second, third and fourth causes of action (which relate to the 1973–74, 1974–75, 1975–76, and 1976–77 school years, respectively) and with respect to plaintiffs' claim for money damages against the Commissioner but are denied in all other respects. Plaintiffs' motion for summary judgment is hereby ORDERED denied without prejudice to renewal upon further development of the record.

It is further ORDERED that the school district (and its COH) shall, upon plaintiffs' request, conduct further hearings and/or proceedings directed towards clarifying the issues discussed in this Memorandum and Order and in the Commissioner's December 23, 1980 decision. Said proceedings shall be held, and specific findings shall be rendered pursuant thereto, within forty days after plaintiffs' request therefor. Unless plaintiffs notify the Commissioner that a satisfactory placement for Peter has been arranged pursuant to said proceedings, the Commissioner shall review the school district's findings within thirty days thereafter. The Commissioner's review of such findings shall include consideration whether Peter's placement at Clarke should be approved.[12] This action is hereby ORDERED

---

regular classrooms of a public school system" (*Ibid.*), whereas the present case involves a child who has not been "mainstreamed." Nevertheless, the court made clear that the role of the courts in reviewing the decisions of state and local agencies is confined to the determination whether the procedural requirements of the EAHCA have been complied with and whether the program of education developed via those procedures is reasonably calculated to enable the child to receive educational benefits.

12. In this regard the Commissioner has refused to approve Clarke for the placement of handicapped children on the grounds that it would not comply with the EAHCA's "least restrictive environment" criterion because of its distance from students' homes. However, Peter's home is virtually the same distance from Lexington as it is from Clarke. Thus, further development of the record may support a conclusion that the Commissioner's failure to approve Peter's placement at Clarke is arbitrary and capricious. If further proceedings show that the case for Peter's placement at Clarke is suffi-

stayed pending the conduct of further proceedings by the school district and the Commissioner's review thereof. Defendants shall file their answers to the Complaint within twenty days after the conclusion of said proceedings and review by the Commissioner, which answers shall include copies of all documents and records relating to said proceedings and review.

ciently "compelling," the Commissioner should consider whether to "reverse himself" and allow Peter to be placed at Clarke at public expense. *See, Riley v. Ambach, supra,* at 642.