**Mary Ellen BARWACZ, individually, and as parent and next friend of Jennifer Kulmacz, a Minor, Plaintiff,**

v.

**MICHIGAN DEPARTMENT OF EDUCATION; Phillip E. Runkel, Superintendent of Public Instruction; Ed Birch, Director of Special Education for the State of Michigan; the Kent Intermediate School District; George Woons, Superintendent of Kent Intermediate School District; Northview Public Schools; and Paul C. Lemin, Superintendent of Northview Public Schools, Defendants.**

No. G87–65.

United States District Court, W.D. Michigan.

Dec. 7, 1987.

Gruel, Mills, Nims, & Pylman by J. Clarke Nims, Grand Rapids, Mich., Oosterman, York & Cooper by Gary R. Peterson, Kalamazoo, Mich., for plaintiff.

Frank J. Kelley, Atty. Gen. by Paul J. Zimmer & Gerald F. Young, Asst. Atty. Gen., Lansing, Mich., for defendants Michigan Dept. of Educ., Runekl & Birch.

Day, Sawdey, Flaggert & Porter by William A. Hubble, Grand Rapids, Mich., for defendants Kent Intermediate School Dist., George Woons, Northview Public Schools & Paul C. Lemin.

## OPINION

ENSLEN, District Judge.

Plaintiff Mary Ellen Barwacz is the parent of Jennifer Kulmacz, a fourteen year old handicapped student who is severely hearing-impaired. Defendants include various state governmental agencies, the Kent County Intermediate School District and the Northview Public Schools ("NPS"). Special education for handicapped students is regulated by both federal statute and regulations and state statute and administrative rules. The applicable federal statute and regulations at play here are the Education of the Handicapped Act ("EHA")[1], 20 U.S.C. § 1400 *et seq.* and 34 C.F.R., Part 300. The Michigan statute is the School Code of 1976, §§ 1701–1766, M.C.L.A. §§ 380.1701–380.1766; M.S.A. §§ 15.41701–15.41766, and Administrative Rules 1980 AACS, R340.1701–R340.1873. Count 1 of plaintiff's complaint alleges a violation of the EHA (plaintiff incorrectly styled the EHA as the Handicapped Children's Protection Act of 1986, but it is clear that plaintiff is proceeding under the EHA). Count 2 alleges a violation of Michigan's Mandatory Special Education Act ("MMSEA"), M.C.L.A. § 389.1701 *et seq.;* M.S.A. § 15.41701.

Plaintiff primarily seeks judicial review of administrative proceedings to determine the appropriate educational placement of Jennifer Kulmacz. Currently pending before this Court are defendant school district's motion for dismissal and defendants Michigan State Board of Education, Phillip E. Runkel and Edward Birch's motion for partial dismissal or summary judgment. In addition, this Court, under its own motion, requested both parties to submit briefs addressing the issue of whether pendent jurisdiction should be maintained with respect to the state law claims.

### Facts

Jennifer's first exposure to special education occurred before she was six months

---

**1.** The Education of All Handicapped Children Act of 1974 ("EAHCA"), 89 Stat. 773, Pub.L. 94–142, amended the EHA effective 1977. Pub. L. No. 91–230, 84 Stat. 175 (1970) (codified at 20 U.S.C. §§ 1400–1454).

old. From approximately January 1973 until June 1976 she and her parents participated in the Ken–O–Sha Preschool program in the Grand Rapids School District. Thereafter, Jennifer participated in Northview's Total Communication Program ("TCP")[2] until the fifth grade. From 1984 until 1985 she attended the Michigan School for the Deaf in Flint, Michigan. The following school year she returned to the TCP at Northview. In the fall of 1986, Jennifer enrolled in the ninth grade at the Model Secondary School for the Deaf[3] in Washington, D.C., and is, apparently, still attending school there. *See* Ex. S–4, Educational History of Jennifer Kulmacz, attached at Tr. 139. The family currently resides in the Northview Public School District, Grand Rapids, Michigan.

Jennifer Kulmacz is clearly a handicapped person within the meaning of 20 U.S.C. § 1400, *et seq.* Because defendants receive federal assistance under section 1400 *et seq.*, they have the duty to establish and maintain policies and procedures which will assure Jennifer Kulmacz the right to a "free appropriate public education." 20 U.S.C. § 1412(1). "Free appropriate public education" is defined by 20 U.S.C. § 1401(18) as special education and related services provided at public expenses pursuant to an individualized education program ("IEP"). "Special education" is defined by 20 U.S.C. § 1401(16) as "specially designed instruction ... to meet the unique needs of a handicapped child."

In developing a free appropriate educational program, the parents of the student are provided certain procedural safeguards. *See* 20 U.S.C. § 1415. This program must be developed by an Individualized Education Program Committee ("IEPC") in which the parent is given an opportunity to participate. If the parent does not agree with the IEP that is developed, he or she must be provided an impartial administrative hearing and review. If the parent still disagrees with the administrative decisions, then he or she may seek judicial review.

On May 22, 1986 an IEPC meeting was held to review Jennifer's program. Plaintiff Barwacz disagreed with the report and on May 28, 1986 requested a hearing concerning the appropriate educational placement of Jennifer. Because plaintiff believed that both the EHA and the MMSEA required that Jennifer be placed in the MSSD, she unilaterally placed her there. Plaintiff now seeks to be reimbursed for transportation expenses in the approximate amount of $2,500 per year. Plaintiff's complaint demands damages in the amount of $30,000. Assuming the Court finds a violation under the EHA, it must then decide the related question of whether and to what extent "damages" are authorized under the EHA.

*Discussion*

*Scope of Review*

The EHA provides that in reviewing a complaint, a court "shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(e)(2).

The leading case interpreting the EHA is *Hendrick Hudson Bd. of Ed. Dist. v. Rowley,* 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed. 2d 690 (1982). In discussing the scope of judicial review under the EHA, the Court said:

... [A] court's inquiry in suits brought under § 1415(e)(2) is twofold. First, has the State complied with the procedures

---

**2.** A Total Communication Program includes the simultaneous use of "speech," sign language and finger spelling. It emphasizes, as the phrase suggests, "total communication" (Tr. at 137–139) as opposed to a purely "oral" or "lipreading" approach. The oral method relies exclusively on residual hearing, lip reading and "speech." The oral method does not use sign language on the theory that it can detract from the child's development of speech communication skills.

**3.** MSSD is a federally funded program which does not require tuition or residence charges. However, because the school closes its dormitory facilities eight times a year for periods of three or four days at a time, Jennifer's parents estimate that they have incurred and will continue to incur "round-trip" transportation expenses in the area of $2,500 per year.

set forth in the Act? And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits? If these requirements are met, the State has complied with the obligations imposed by Congress and the courts can require no more.

The First Circuit has observed that judicial review proceedings under the EHA are "something short of a trial *de novo.*" *See Colin K. by John K. v. Schmidt,* 715 F.2d 1, 5 (1st Cir.1983). *Rowley* clearly requires that a court give due weight to the administrative hearing testimony. *Rowley* rejected the argument that a *de novo* review of the state administrative hearing gave a court broad powers to overturn placement decisions. The *Rowley* court noted that "[t]he provision that a reviewing court base its decision on the 'preponderance of the evidence' is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." *Rowley,* 458 U.S. at 206, 102 S.Ct. at 3051. The *Rowley* court clearly concluded that a court is to give greater deference to the state's placement decision providing the procedural requirements of the Act are met. Here, plaintiff has not really challenged the procedural safeguards, but rather alleges that she has not been provided a free appropriate education within the meaning of the Act.

The *Rowley* court underscored the federalism concerns which underlay and buttressed its rationale.

In assuring that the requirements of the Act have been met, courts must be careful to avoid imposing their view of preferable educational methods upon the states. The primary responsibility for formulating the education to be accorded a handicapped child, and for choosing the educational method most suitable to the child's needs, was left by the Act to state and local educational agencies in cooperation with the parents or guardian of the child.

Implicitly noting that it had previously held that education itself is not a "fundamental right," the court concluded:

We previously have cautioned that courts lacked the 'specialized knowledge and experience' necessary to resolve 'persistent and difficult questions of educational policy.' *San Antonio Independent School Dist. v. Rodriguez,* 411 U.S. [1] at 42, 36 L.Ed.2d 16, 93 S.Ct. 1278 [at 1301]. We think that Congress shared that view when it passed the Act. As already demonstrated, Congress's intention was not that the Act displace the primacy of states in the field of education, but that states receive funds to assist them in extending their educational systems to the handicapped. Therefore, once a court determines that the requirements of the Act have been met, questions of methodology are for resolution by the states.

*Id.* at 208, 102 S.Ct. at 3052.

Defendants argue that if the Northview Public Schools Total Communications Program meets the Act's requirements by providing the plaintiff's daughter with a free appropriate public education, then they have satisfied their duties under the Act and the complaint should be dismissed. Defendants argue further that although the Act provides that a reviewing court "shall hear additional evidence at the request of a party," this section does not permit a retrial of matter heard at the state administrative hearing.

The *Burlington v. Dep't. of Education,* 736 F.2d 773 (1st 1984) court analyzed the additional evidence clause of the Act as the key to understanding the proper scope of review which should be undertaken by a district court in an EHA case. The *Burlington* court said that additional simply means "supplemental" and that:

thus construed, [the additional evidence] clause does not authorize witnesses at trial to repeat or embellish their prior administrative hearing testimony; this would be entirely inconsistent with the usual meaning of "additional." We are fortified in this interpretation because it structurally assists in giving due weight

to the administrative proceeding, as *Rowley* requires. (citation omitted). *Burlington,* 736 F.2d at 790. *Burlington* emphasized that "[a] trial court must make an independent ruling based on the preponderance of the evidence, but the Act contemplates that the source of the evidence generally would be the administrative hearing record with some supplementation at trial." *Id. Burlington* concludes that "[t]he determination of what is 'additional' evidence must be left to the discretion of the trial court, which must be careful not to allow such evidence to change the character of the hearing from one of review to a trial *de novo.*" *Id.* at 791.

Relying on *Rowley, Roncker on behalf of Roncker v. Walter,* 700 F.2d 1058 (6th Cir.1983) and *Burlington* as articulating the basic standard and scope of review, the defendants conclude that any additional evidence which plaintiff seeks to introduce at the time of trial reflecting the satisfactory performance of Jennifer at MSSD should be excluded because such testimony is not relevant to the issue before the Court, which, in defendants' view, is whether the defendants have created an appropriate program for her which meets the requirements of federal and state statutes. Defendants conclude that there is no additional evidence that is relevant to the question under review and that the Court should rule on defendants' motion based upon the records from the administrative hearing already filed with the Court.

The Court notes that in general "nothing in the language or legislative history of the EHA precludes a court from deciding appeals on the basis of summary judgment." *Vander Malle v. Ambach,* 667 F.Supp. 1015 (S.D.N.Y.1987); *see also Victoria L. By Carol A. v. District School Board of Lee County, Florida,* 741 F.2d 369, 372 (11th Cir.1984). Of course, the usual requirements for the granting of Rule 56 motions—requirements which are well-known in this Circuit and need not be repeated here—are still applicable. While a summary judgment motion does not prevent a court from hearing evidence pertaining to material issues of fact, a party must demonstrate that it has such evidence in

order to "avoid a possible waste of the court's time and resources." *Victoria L.,* 741 F.2d at 372. Where defendants submit the entire record of the administrative proceedings, a court may properly base its decision on such "unopposed evidence." *Id.* at 373.

■ The expert testimony in *Victoria L.* was unopposed by plaintiff. Here plaintiff argues that by raising the question of whether expert testimony or other additional evidence would prove fruitful in and of itself indicates that material facts are in dispute. In addition, plaintiff argues that the question of whether the school district's IEP was appropriate is also a question of "fact." As to the latter matter, the Court believes the question is probably better characterized as a mixed question of law and fact. *Cf. Gregory K. v. Longview School Dist.,* 811 F.2d 1307, 1310 (9th Cir. 1987). The Court believes that as a general matter, summary judgment should not be granted in EHA cases. The Court finds that this is especially true where there is apparently going to be some additional testimony by a plaintiff's expert or experts.

To a certain extent plaintiff's claim for reimbursement appears to rise and fall on a reading of "maximum potential" which suggests that defendants are required to provide the best academic environment possible. For example, plaintiff's response to defendant school district's reply brief requests that the Court consider all relevant facts. Plaintiff argues that "[i]n this case, [relevant] facts which could be weighed in considering the most appropriate educational environment for Jennifer might include the following: which environment Jennifer feels best suited to; which environment can challenge Jennifer's needs—both socially and academically; and which environment —the 'traditional' schoolroom in which the teacher and students speak out and Jennifer must rely upon a translator, or a school specifically designed for deaf students— has a stronger history of benefiting deaf students academically." Plaintiff's Response to Defendant School District's Reply Brief at 3. Plaintiff requests that after

a full evidentiary hearing the Court decide which environment is best suited to help Jennifer maximize her potential as a deaf student.

Still, at other times plaintiff appears to argue that the IEP developed was not one designed to maximize plaintiff's potential within the least restrictive environment. The Court believes that it would benefit from some additional expert testimony concerning this issue. A review of the relevant case law indicates that in general district courts find expert testimony helpful in illuminating the nature of the controversy and have often relied upon it reaching their decisions. *See e.g., Town of Burlington v. Dept. of Educ., Com. of Mass.,* 736 F.2d 773, 791 n. 22 (1st Cir.1984).

■ The Court understands defendants' argument that plaintiff to some extent misconstrues the legal meaning of the term "maximum potential" insofar as she asks the Court to do precisely what it has been told by the Supreme Court that it is *not* free to do: "substitute its own notions of sound educational policy for that of the school board." *Rowley,* 458 U.S. 176, 206, 102 S.Ct. 3034, 3051. The bottom line is that this Court must determine whether the IEP developed by the defendants complies with the procedures set forth in the Act and whether the special education offered the child is reasonably calculated to enable her to receive educational benefits. That the State of Michigan has arguably imposed a higher standard which indicates that a plan is to be designed to develop her maximum potential and because that standard is incorporated into the EHA does not, for that reason, allow the Court to substitute its own notions of educational policy for that of the school board.

■ The Court concedes that a standard which truly sought a model education, adopting the most sophisticated pedagogical methods without fiscal or geographic constraints, might implicitly allow or even "require" a court to substitute its own judgment where a school board was not living up to its own "utopian" standard. While such a standard is not at play here, it is clear that something more than the fed-eral minimum is required, and the Court does not believe that the record as it currently exists allows the Court to make that determination. The Court believes that it has a duty under the EHA to determine— based upon a "preponderance of the evidence" and under a *de novo* review— whether the plaintiff's proposed special education program was designed to "maximize her potential." However, the Court believes that there are material facts in dispute with respect to the issue of whether the administrative record established that Jennifer's program met the substantive requirements of the EHA—allowing that Michigan's "higher" state standard is incorporated in the EHA.

On the one hand, plaintiff appears to be arguing that the higher standard has not been met, and because the higher standard has not been met plaintiff has taken the financial risk of unilaterally placing a handicapped child in a program designed, in her opinion, to maximize plaintiff's potential. On the other hand, plaintiff appears to be arguing that the higher standard has not been met *because* plaintiff is aware of and has compared the program developed for her in Michigan with the MSSD in Washington, D.C.

■ It appears to the Court that the plaintiff has a difficult burden in this case, but the Court emphasizes that it cannot say at this point that there are no material facts in dispute and that defendant is entitled to prevail as a matter of law. The Court concedes that section 1415(e) contains no provision specifically assigning the burden of proof to a particular party in an appeal of an agency decision. However, the Court notes that as a general matter in agency appeals it is appropriate to assign the burden to that party which seeks to overturn the findings and decision of the agency. Further, the allocation of proof will assist the Court in according the administrative agency's expertise the weight it is to be assigned under *Rowley. Cf. Burlington,* 736 F.2d at 794 *citing Mazaleski v. Treusdell,* 562 F.2d 701, 717 n. 38 (D.C.Cir.1977).

■ It may well be that plaintiff will not succeed in securing a declaratory judgment that the MSSD program is the most appropriate education, yet still be entitled to *some* reimbursement because plainitff is able to prove that the IEP developed by defendants was not designed to maximize her potential; yet it might also be true that ultimately the State will not be required to provide *any future costs* of transportation to the MSSD because, as the Court will make clear, the precise "remedy" plaintiff seeks may not be available under Michigan law. Put differently, the Court's determination with respect to "maximum potential" is a mixed question of fact and law, and therefore the Court will have to determine what constitutes relevant state "substantive" law for incorporation purposes.

Although the Court will deny defendants' motion for summary judgment with respect to the EHA claim, the Court believes that there are a number of legal issues that can be decided with respect to the EHA claim which relate to defendants' motion for partial dismissal or summary judgment that will help shape the future course of this litigation.

### The EHA Claim

Defendants concede that this Court may consider both the federal and the state requirements in determining the issue of the adequacy of the IEP. *See e.g., Town of Burlington, supra.* However, defendants argue that although the state requirement is set forth in different language, the standards of the state and federal statutes are substantively similar, if not identical.

■ Plaintiff admits that 20 U.S.C. § 1401 indicates that "all handicapped children have available to them ... a free appropriate public education which emphasizes special education and related services designed to meet [the child's] unique needs...." However, plaintiff contends that the statute goes on to define "free appropriate education" as a special education and related services which meet four requirements including that the education or related services "meet the standards of the State educational agency." See 20 U.S.C. § 1401(18). Plaintiff concludes that

when a state's statute mandates that state and subordinate governmental units provide a higher level of educational opportunity for handicapped students, the content of the defining term "free appropriate education" must necessarily change. The Court agrees. The First Circuit has observed that Congress did not intend to "preempt and reduce all state standards to the federal minimum." *David D. v. Dartmouth School Committee,* 775 F.2d 411 (1st Cir.1985). The *Dartmouth* court went on to note that:

It would seem beyond cavil that the federal standard explicitly incorporates some of a state's substantive law into the federal [EHA] Act.... The Congress explicitly defined a free appropriate public education as an education which 'meets the standards of the State educational agency' and expressly authorized review of the question whether the education actually provided (or proposed) met those standards. Where a state has chosen to provide by law greater benefits to handicapped children than the federal Act requires, we believe Congress explicitly mandated that the courts—both federal and state—determine whether those state standards have been met.

*Dartmouth,* 775 F.2d at 420.

The Court observes that the *Dartmouth* court indicated that it was not required at that time to decide "the extent of what constitutes 'relevant' state substantive law, ... [but held] only that a state's overall standard for evaluating the IEP's of handicapped children is incorporated by the federal Act." *Id.* The Court believes, that in the case before it, it is necessary to decide not only what constitutes relevant state substantive law, but also the extent to which such law is necessarily incorporated.

Plaintiff argues further that Michigan is somewhat unique in that it has required that the State Board of Education and subordinate levels of government provide an education to handicapped students which is subject to a "higher" test than that set forth in the EHA.

Indeed, Michigan's Mandatory Special Education Act provides that the State

Board of Education, the intermediate school boards, and local school districts "shall provide special education programs and services *designed to develop the maximum potential of each handicapped person.*" M.C.L.A. §§ 380.1701, 380.1711, and 380.1751, respectively (emphasis added).

Defendants concede that Michigan requires a program that is "appropriate" within the meaning of *Rowley,* and at the same time asserts that the program must be designed to develop the maximum potential of each handicapped person. However, defendants argue that the differences between the Michigan standard and the federal standard are purely "nominal." Stated somewhat differently, defendants argue that the intention of the Michigan legislature was the same as that set forth in the federal statute: to provide a satisfactory education to handicapped children to the same extent as non-handicapped children. *See* Defendants' Brief in Support of Motion for Dismissal at 12–13. Defendants argue, however, that the Michigan statute was enacted before the federal statute and therefore did not use the federal requirements as a guide. Defendants contend that only if the Michigan statute had been enacted *after* the federal statute could it be said that Michigan intended to impose a more strict standard.

■ The Court is not persuaded that this is so. Although the Michigan Supreme Court has apparently never addressed this issue, there is some indication based on the relatively few Michigan Court of Appeals decisions which have interpreted the Act, as well as the plain language of the Act itself, that Michigan requires something more than the basic federal minimum. Defining precisely what that "something more" *is* and applying the heightened standard to the facts of a specific case is more problematic.

As early as 1979, in *Flint Bd. of Education v. Williams,* 88 Mich.App. 8, 276 N.W.2d 499 (1979), the Michigan Court of Appeals discussed school board plans which it noted were designed to focus on the delivery of special education programs calculated to develop the maximum potential of handicapped students. The *Flint* court noted further that under the rule-making power delegated to it by the legislature in the school code, the State Board of Education promulgated detailed rules designed to protect a handicapped person's statutory right to participate in special education programs. The court noted, in passing, that it was necessary to establish a legislative and administrative framework in order for Michigan to be eligible for federal assistance for the education of handicapped children under the EHA. The court also noted another requirement of the EHA to which state plans must conform. "State plans must assure that, to the maximum extent possible, handicapped children are educated with non-handicapped children and that special classes or other removal of handicapped children from the regular educational environment occurs only when the nature or severity of the handicap is such that education in regular classes with supplementary services cannot be achieved satisfactorily. 20 U.S.C. § 1412(5)." *Id.* at 14, 276 N.W.2d 499. This is the so-called "mainstreaming requirement."

The *Flint* court specifically addressed the question of the interrelationship between the probate court's statutory authority to take jurisdiction over students who repeatedly violate school rules and the school code's special treatment of handicapped persons. *Id.* at 15–16, 276 N.W.2d 499. The court concluded that the probate court had jurisdiction only after a final administrative decision had been made under the school code's special education provisions. The court noted that the final decision would necessarily indicate that "no program within the school system could adequately address the child's special needs and *satisfactorily develop the child's maximum potential.*" *Id.* at 17, 276 N.W.2d 499 (emphasis added). While the question of precisely what a program which is designed to develop a handicapped child's maximum potential should look like was not before the court, it alluded to the basically procedural requirements set forth in in EHA and appears to this Court to have assumed, without discussion, that by failing to amend its earlier statute, the Michi-

gan legislature had intended its "more strict" or "higher" substantive standard to be incorporated in the EHA.

In *Woolcott v. State Bd. of Ed.*, 134 Mich.App. 555, 562, 351 N.W.2d 601 (1974), the Michigan Court of Appeals noted, after discussing the regulatory language for mainstreaming handicapped students, that Michigan's implementing statute goes even further than the EHA. The *Woolcott* court did not have occasion to discuss or actually apply the "heightened standard," but merely observed that the statutory goal in Michigan is to " 'develop the maximum potential of every handicapped person.' MCL 380.1701(a); MSA 15.41701." *Id.* Plaintiffs alleged that the failure of the state board and the intermediate school district to supply the handicapped child with a cued speed interpreter as an aid or service within the meaning of the EHA statute to enable the child to be mainstreamed violated both the EHA and the MMSE. *Id.* The court reached only the question of whether the state defendants were proper parties and whether money damages are available under the MMSE and the EHA.

A recent Court of Appeals decision, *Nelson v. Southfield Pub. School*, 148 Mich. App. 389, 384 N.W.2d 423 (1986), provides more guidance in interpreting the term "maximum potential" and outlines in some detail the process by which the EHA incorporates the higher Michigan standard.

> The district argues that the state review official's decision that Michigan's mandatory special education act (MMSE), MCL 390.1701 *et seq.;* MSA 15.41701, *et seq.*, requires the district to place Debra in a special education class program with a maximum student-to-staff ratio of three to one is not supported by competent, material and substantial evidence on the whole record.
>
> The EHA, 20 USCC 1401, *et seq.*, requires the state to develop a plan assuring all handicapped children the right to free appropriate public education. 20 USC 1412(1). Free appropriate public education means services which meet the standards of the state educational agency. 20 USC 1401(18)(B). MCL 380.1701; MSA 15.41701 requires the state board of education in cooperation with intermediate school boards to develop a state plan for special education which provides services designed to develop the maximum potential of every handicapped person. The EHA incorporates by reference the more rigorous Michigan standards requiring that the special education program maximize the potential of the handicapped person. See *Twp of Burlington v. Dep't of Education*, 736 F2d 773 (CA 1, 1984), *aff'd* 471 US [359]; 85 L.Ed. 2d 385; 105 S.Ct. 1996 (1985).
>
> MCL 380.1701; MSA 15.41701 does not define the phrase "maximum potential." We believe that there is some limitation on what kind of program is required. When two competing educational programs which meet the child's requirements are evaluated, the needs of the handicapped child should be balanced with the needs of the state to allocate scarce funds among as many handicapped children as possible. *Age v. Bullitt County Public Schools*, 673 F.2d 141, 146 (CA 6, 1982). However, assuming in this case that funds are available for two proposed educational programs, each suitable to enable the child to reach her maximum potential, it would appear reasonable to adopt the program requiring lesser expenditure.

*Nelson v. Southfield Pub. School*, 148 Mich.App. at 392–393, 384 N.W.2d 423 (1986).

While the Court believes that putting the correct legal gloss on the term "maximum potential" requires some consideration of two other Michigan statutes, the Court does not believe that those statutory limitations support defendants' conclusion that the Michigan "maximum potential" standard "requires no greater program than the federal standard." *See* Defendant School District's Brief in Support of Dismissal at 12.

MSA 15.41711 [M.C.L.A. § 380.1711] provides:

(1) The intermediate school board shall:

Plan; development; requisites. (a) Develop, establish, and continually evaluate and modify in cooperation with its constituent districts, a plan for special education which shall provide for the delivery of special education programs and services *designed to develop the maximum potential of each handicapped person* of whom the intermediate school board is required to maintain a record under subdivision (f). (emphasis added). Michigan Statute MSA 15.41751(1) [M.C.L.A. § 380.1751(1)] provides:

"The board of a local school district shall provide special education programs and services designed to develop the maximum potential of each handicapped person in its district on record under section 1711 for whom an appropriate educational or training program can be provided in accordance with the intermediate school district special education plan, in either of the following ways or a combination thereof:

(a) Operate the special education program or service.

(b) *Contract with its intermediate school board, another intermediate school board, another local school district board, an adjacent school district board in a bordering state, the Michigan school for the blind, the Michigan school for the deaf, the department of mental health, the department of social services, or any combination thereof, for delivery of the special education programs or services, or with an agency approved by the state board for delivery of an ancillary professional special education service.* The intermediate school district of which the local school district is constituent shall be a party to each contract even if the intermediate school district does not participate in the delivery of the program or services. M.C.L. § 380.1751(1); M.S.A. § 15.41751(1)." (Emphasis added herein.)

■ While the Court believes that section 1751 provides some indication that "maximum potential" does not mean that the State must seek the best possible school in the nation, it does indicate a willingness to

at least contract with a number of different agencies as well as school district boards in bordering states. While the Court believes that the "limiting" statutes are to some extent included in a gloss of the "maximum potential" standard which is incorporated in the EHA, the Court does not believe where plaintiff has unilaterally placed a student in a school whose geographic location is outside that listed in the statute, that *that* fact somehow *precludes* a finding that the IEP developed for Jennifer Kumzac is not designed to develop her "maximum potential." Such a placement, of course, may well limit, or perhaps exclude altogether, a plaintiff's request for reimbursement. *Cf. Alamo Hgts. Ind. Sch. Dist. v. State Bd. of Educ.*, 790 F.2d 1153, 1161 (5th Cir.1986) (noting some factors a court may consider in determining whether full or partial reimbursement is appropriate: the effort expended by plaintiff in seeking alternative placements, the general cooperative or uncooperative efforts of the district, etc.). The *Alamo* court noted that the rule fashioned in *Burlington* concerning reimbursement is not so narrow as to permit reimbursement only when the interim placement chosen by the parent is found to be the exact proper placement required under the Act.

Further, expert and other relevant testimony as to what other schools, possibly "model" schools, have developed in terms of individualized programs may be relevant and provide some insight as to what a program designed to develop "maximum potential" may look like. The Court emphasizes, however, that the type of *de novo* review contemplated under the statute requires the Court to focus *primarily* on the district's proposed placement and not on the alternative that the family preferred. Accordingly, even if it is shown that the MSSD is better for Jennifer, that would *not necessarily* mean that the district's placement was inappropriate. *Cf. Gregory K.*, 811 F.2d at 1314.

*The Claim for Monetary Damages under the EHA*

■ The Court believes that *Burlington, supra,* clearly establishes that where a

school district proposes an inappropriate placement, courts may order such districts to reimburse parents who pay to maintain an appropriate placement. So in this sense money damages in the way of reimbursement are always proper. State defendants claim, however, that any monetary damages against them would be barred by the eleventh amendment. *See Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985); *See also Gerasimou v. Ambach,* 636 F.Supp. 1504 (E.D.N.Y.1986). (There is, of course, no immunity problem with respect to the local school district.) *Gerasimou* indicates that, in general, monetary damages are available only where there has been bad faith or an egregious failure to comply with the procedural provisions of EAHCA. *Id.* at 1512. *Gerasimou* also held that the eleventh amendment bars recovery of money damages from the state, but it did so without discussion or analysis. The Court simply does not find the state defendants' or *Gerasimou*'s eleventh amendment argument persuasive. The Court does find persuasive the recent analysis of the First Circuit which held that Congress acted pursuant to its fourteenth amendment powers in passing the EHA and effectively abrogated the sovereign immunity of the states from suit in federal court. *See Dartmouth,* 775 F.2d at 420–423 (1st Cir.1985).

The Court also notes that the EHA does provide that a court may "grant such relief as [it] deems appropriate." 20 U.S.C. § 1415(e)(2). However, most courts deciding the issue of monetary damages prior to *Burlington School Committee v. Department of Education,* 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985), held that damages, except reimbursement-type claims, are not appropriate absent exceptional cases. *See e.g., Ruth Anne M. v. Alvin Indep. School Dist.,* 532 F.Supp. 460, 468 (S.D.Tex.1982) ("reimbursement" damages only appropriate damages available); *see also Hurry v. Jones,* 560 F.Supp. 500 (D.R. I.1983) (allowed compensatory damages where school officials found acting in bad faith); *Matthews v. Ambach,* 552 F.Supp. 1273, 1278 (W.D.N.Y.1982) ("limitations preventing the court from awarding any monetary damages whatsoever should not be lightly inferred.").

While there can be no doubt that as a matter of law *reimbursement damages* are available—if the Court were to find that the state defendants violated the Act *and* that the MSSD school was the only appropriate placement, transportation damages *might* be available as part of some ancillary prospective relief. But a final resolution of that somewhat novel issue is premature at this time. Still, while the Court holds that monetary damages in appropriate EHA cases are not barred by the eleventh amendment, the Court believes that plaintiff has failed to allege any material facts which would allow her to seek monetary damages, beyond those for reimbursement purposes, in this case. Applying the standards set forth in Rule 56, the Court will grant defendants' motion for partial summary judgment to the extent that plaintiff's claim for monetary damages seeks damages beyond those properly awarded for reimbursement purposes. (Reimbursement damages are only available, of course, if plaintiff prevails on her EHA claim). In all other respects, state defendants' claim for partial summary judgment as to the EHA claim is denied.

*The § 504 Claim*

In *Smith v. Robinson,* 468 U.S. 992, 1021, 104 S.Ct. 3457, 3473, 82 L.Ed.2d 746 (1984) the Supreme Court indicated that "where ... whatever remedy might be provided under § 504 is provided with more clarity and precision under the EHA, a plaintiff may not circumvent or enlarge on the remedies available under the EHA by resort to § 504." Moreover, the facts of this case do not signal the existence of any exceptions to this general rule. For example, this case does not involve a situation where the EHA is not available or where there is a proper application of § 504's guarantee of substantive rights greater than those available under the EHA. On the contrary, the facts of this case indicate quite clearly that this is exclusively an EHA claim. Further, plaintiff never provided a jurisdictional statement for its § 504 claim and, in fact, seems to have abandoned it. Accordingly, based on the authority of *Smith,* the Court will grant

defendants' motion to dismiss plaintiff's § 504 claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

*The State Law Claims*

 The Court believes that it is now beyond argument that in an EHA suit "state law cannot provide a separate basis for relief via a pendent state claim." *See Town of Burlington v. Department of Education of Massachusetts,* 736 F.2d 773, 788 (1st Cir.1984), *aff'd sub nom. Burlington School Committee v. Department of Education,* 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985). *Accord Smith v. Robinson,* 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984) (the EHA as amended by the EAHCA provides the sole remedy for a handicapped child who has been denied the right to a free appropriate public education); *see also Dartmouth, supra,* at 422 ("in the EHA context ... no pendent state claim will lie").

Accordingly, plaintiff's claims under the MMSEA are dismissed pursuant to Rule 12(b)(6). Further, the motion for retention of pendent claims is dismissed as moot. In addition, the Court will enter an order granting defendants' motion for summary judgment as to damages under the EHA and denying it in all other respects. The Court has, of course, also granted defendants' motion to dismiss plaintiff's § 504 claim.